IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RICHARD LaPOINTE,**

  Plaintiff,

vs.             Case No.:  CIV 05-1232 MV/WPL

**VICTOR A. BENNISH,**
**DONNA RAE BENNISH,**
**KENNETH BEAL, and**
**LLOYD O. BATES, JR.**

  Defendants.

<u>**MEMORANDUM OPINION and ORDER**</u>

  This matter comes before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 13, filed February 10, 2006] and his Motion for Preliminary Injunction and Restraining Order. After considering the motion, the response, the record, and the relevant law, and otherwise being fully informed, the Court finds that the motion for summary judgment should be **GRANTED** to the extent discussed below.  Accordingly, the motion for preliminary injunction will be **DENIED** as moot.

**I.  Undisputed Facts**

  Plaintiff filed a diversity suit to collect a debt and impress a lien.  Both arise from a contract for a contingent attorney fee of $75,813.06 that he contends he earned upon obtaining $227,441 of "back benefits" for Defendant Victor A. Bennish in proceedings before the Department of Veterans Affairs ("VA").  Mr. LaPointe's motion for injunctive relief regards an attorney "charging lien" that he filed in state district court divorce proceedings between

1

defendants Victor and Donna Bennish to recover those fees. The facts as presented in Mr.

LaPointe's affidavits are undisputed, as Defendants did not file any affidavits and the exhibits they

submitted in response to the summary judgment motion do not call into question Mr. LaPointe's

version of the facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("One of the

principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported

. . . defenses . . . .").

Mr. Bennish contacted Mr. LaPointe in 1997, but neither he nor his wife personally met

with Mr. LaPointe. They agreed that Mr. LaPointe would represent Mr. Bennish in his request

for a review of his disability ratings before the VA. Donna Bennish signed a "fee payer

agreement" providing for a 1/3 contingency fee for legal services, with Mr. Bennish's approval[1].

Mr. LaPointe does not make a claim against Donna Bennish for any fee under the 1997

agreement.

After the VA denied the request for a new rating both initially and on appeal to the Board

of Veterans Appeals, Mr. Bennish authorized Mr. LaPointe to appeal the rulings to the United

States Court of Appeals for Veterans Claims [hereinafter "Veterans Court"]. Before filing the

appeal, however, in July 2000 Mr. Bennish signed a new contingency fee agreement. It provided:

> I hereby retain attorney Richard A. LaPointe to represent me in seeking an
> increased VA disability rating and back benefits before the Department of Veterans
> Affairs ("VA") and the Court of Appeals for Veterans Claims. The attorney will

---

[1] Payee agreements in which the veteran's spouse or other family member is named as the
third-party fee payee have been criticized as "blatant attempts to avoid the restriction, imposed by
the Veterans' Judicial Review Act . . . that attorneys may not charge veterans for services which
are rendered before the first final Board decision on an issue," and the relevant statutes allowing
for third-party payee agreements were amended in 2002 "to help enforce statutory limitations on
payment that are being violated." *Carpenter, Chartered v. Sec'y of Veterans Affairs*, 343 F.3d
1347, 1353 (Fed. Cir. 2003).

> take over all pending claims and may file new claims or appeals to obtain an increased rating or back benefits.
>
> The veteran agrees to pay a legal fee equal to one-third (1/3) of the amount of all back benefits obtained for the legal services rendered by the attorney.
>
> If the veteran's case is remanded to the VA for additional proceedings and the Court orders the VA to pay a legal fee, the attorney will be entitled to that fee as compensation for obtaining the remand.

Def. Resp. Br. Ex. B.   Mr. LaPointe filed a copy of this agreement with his appeal, as required by statute.  *See* 38 U.S.C. § 5409(c)(2).  He was successful in obtaining remand and a review of Mr. Bennish's disability ratings.  In October 2000 Mr. LaPointe applied for an award of fees for obtaining the remand under the Equal Access to Justice Act ("EAJA"), and received $875 from the United States.  After remand, Mr. Bennish's disability rating was increased from 40%  to 100%, and in May 2002, he received $88,668 in back benefits.  He paid Mr. LaPointe $29,556 in 2002 as legal fees under the terms of the July, 2000 contingency-fee agreement.

Dissatisfied with the retroactive date the VA had set for back benefits, Mr. LaPointe timely filed a Notice of Disagreement, and in January 2004 the Board of Appeals remanded the claim with instructions to make the starting date of the increase retroactive to November 1994. As a result, Mr. Bennish received an additional $24,992 in back benefits and he sent $8,333 to Mr. LaPointe for attorney fees in June 2004.

Because he still believed the VA had erred in determining Mr. Bennish's date of disability, Mr. LaPointe filed a Supplemental Notice of Disagreement.  The Board of Appeals agreed to mandate the starting date of retroactive benefits to 1979 and the VA paid Mr. Bennish an additional $227,441 in back benefits in March 2005.  But Mr. Bennish refused to pay Mr. LaPointe any further legal fees.

Mr. LaPointe filed suit in district court to enforce the July 2000 legal-fees contract on November 23, 2005.  Mr. Bennish, appearing pro se, filed an answer and a counterclaim for tortious conduct on December 21, 2005, alleging that Mr. LaPointe was holding up his divorce by placing a claim of lien in the divorce action.  The counterclaim requests $29,000 in actual damages plus punitive damages.

Defendants obtained counsel in early February.  On February 15, 2006, Mr. Bennish mailed a "Petition to Review Legal Fees" to the Veterans Court, challenging the reasonableness of the unpaid fees and claiming that the fees he previously had paid to Mr. LaPointe in 2002 were illegal and that he was entitled to a set-off of those fees.  The Veterans Court has construed the petition as a petition for mandamus and has ordered the Secretary to respond.  Defendants moved for a stay of proceedings in federal district court, and the court granted a sixty-day stay of proceedings on March 15, 2006.

Defendants then filed an amended answer and counterclaim (without requesting leave of the court and without Mr. LaPointe's agreement) on March 23.  It raised the alleged impropriety of charges for the legal fees that were paid in October 2002 as the basis for a claim under the New Mexico Unfair Trade Practices Act.  Mr. LaPointe moved to strike the amended answer and counterclaim on April 3, 2006, but Defendants have not responded.  The stay has now lapsed.

## II.  Analysis

Under Fed.R.Civ.P. 56(c), summary judgment shall be entered by the district court: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Mr. LaPointe has established a facially

4

enforceable contingency fee agreement that entitles him to receive 1/3 of the $227,441 in back benefits that Mr. Bennish received in 2005.  Defendants raise several legal arguments that they contend bar the enforcement of the contract, which I address below.

      **A.  Exclusive forum.**  First, citing 38 U.S.C. § 7263 and *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("Congress has the constitutional authority to define the jurisdiction of the lower courts."), Defendants claim that Congress has designated the Veterans Court as the exclusive forum in which the reasonableness of legal fees related to veterans' benefits may be determined, and, therefore, this court may not enforce the contingency-fee contract until the Veterans Court has ruled on Defendants' Petition to Review Legal Fees.  Def. Resp. Br. at 4-5. Mr. LaPointe did not address this argument in his reply brief, but, nonetheless, I disagree.

      "Sections 5904 and 7263 are not . . . jurisdictional provisions.  . . . Section 7263 authorizes the court to 'review' fee agreements between an appellant and a person representing the appellant before the court when an appeal is properly before the court and when a copy of the fee agreement has been filed with the court at the time the appeal is filed."  *In re Wick*, 40 F.3d 367, 371 (Fed. Cir. 1994).  Section 7263, in relevant part, provides:

> (c)  A person who represents an appellant before the Court shall file a copy of any fee agreement between the appellant and that person with the Court at the time the appeal is filed.  The Court, on its own motion or the motion of any party, may review such a fee agreement.

> (d)  In reviewing a fee agreement . . . the Court may . . . order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable. An order of the Court under this subsection is final and may not be reviewed in any other court.

In the case at bar, the fee that Defendants challenge as unreasonable arises from a 2005 Board of Appeals decision that was *not* appealed to the Veterans Court.  Under these circumstances, the

Veterans Court has no jurisdiction to determine the reasonableness of the fee agreement because there is no live appeal and the matter remains in the Board of Appeals. *See Carpenter v. Principi*, 15 Vet. App. 64, 71-72 (2001) (noting that, because its jurisdiction is specifically defined by statute, the Veterans Court has power only to affirm, modify, reverse, or remand a decision of the Board of Appeals, and that "fee agreements are properly before the court . . . when it reviews decisions of the Board concerning an agreement or on any other matter decided by the Board.") (internal quotation marks omitted); *In re Wick*, 40 F.3d at 373 (holding that because the Veterans Court's "judicial power over the case terminated after the court remanded it to the Board [of Appeals]" and it "has not been vested with original jurisdiction over [an attorney's] motion to compel payment [of attorney fees],"including mandamus review, a "Board decision is a statutory prerequisite for the [Veterans C]ourt's jurisdiction" to review the application and reasonableness of a contingency fee agreement).

Under 38 § 5409(c)(2), the Board of Appeals has original jurisdiction to review fee agreements for reasonableness. *See Wick*, 40 F.3d at 371 (holding that attorney "impermissibly bypassed the Board by directly petitioning the [Veterans C]ourt" for mandamus review). Section 5409(c)(2) provides, in relevant part:

> The Board, upon its own motion or the request of either party, may review such a fee agreement and may order a reduction in the fee called for in the agreement if the Board finds that the fee is excessive or unreasonable. A finding or order of the Board under the preceding sentence may be reviewed by the United States Court of Appeals for Veterans Claims under section 7263(d) of this title.

But no petition for such review has been filed in the Board of Appeals.

Defendants cite no authority providing that either the Board of Appeals or the Veterans Court have exclusive jurisdiction to initially determine the reasonableness of a legal fee in a situation in which the attorney is attempting to collect his fees from his client, as opposed as to requesting them directly from the VA.   In both statutes, the language providing for review is permissive and not mandatory.  I conclude that district courts are not prohibited from reviewing the reasonableness of a legal fee in an action to enforce a contingency fee agreement if the veteran challenges the reasonableness of that fee as a defense in the federal action, as Defendants have done here.  Defendants could have reserved their challenge and filed a petition to the Board of Appeals, which could then have required Mr. LaPointe to refund part of the fee found to be unreasonable.  *See* 38 C.F.R. 20.609(i) ("If a reduction in the fee is ordered, the attorney or agent must credit the account of the claimant or appellant with the amount of the reduction and refund any excess payment on account to the claimant or appellant not later than the expiration of the time within which the ruling may be appealed to the United States Court of Appeals for Veterans Claims.")   Defendants having chosen to challenge the reasonableness of the contingency-fee agreement both here and in an administrative appellate court with no original or appellate jurisdiction over the matter,  I conclude that I need not wait any longer to determine whether the contingency-fee contract should be enforced in the case at bar.

**B.  Legality of Mrs. Bennish's agreement.**  Defendants next argue that the July 2000 agreement between Mr. Bennish and Mr. LaPointe should not be enforced because the 1997 agreement that Donna Bennish signed was illegal.  As Mr. LaPointe points out, however, Mr. Bennish, and not Donna Bennish, paid *all* fees based upon the July 2000 fee agreement that *he* signed, Mr. Bennish was not charged a fee until after a final Board decision, and Mr. LaPointe's

7

suit seeks to enforce only the July 2000 agreement.  The legality of the 1997 agreement is therefore irrelevant to this motion for summary judgment.

      **C.  Excessiveness of fees paid in October 2002.**  Defendants contend that, because Mr. LaPointe retained the $875 paid with EAJA funds in November 2000 without offsetting that amount against the fees charged and paid by Mr. Bennish in 2002, the fees paid in 2002 were excessive and unreasonable and should be deemed  illegal.  I disagree that the fees should be deemed illegal on these grounds.  But insofar as Mr. Bennish is requesting an offset for the monies Mr. LaPointe was paid by EAJA funds for obtaining remand, I agree that he is entitled to an offset that will reduce the fees still owed to Mr. LaPointe.  *See Carpenter*, 15 Vet. App. at 76 (noting that "where a claimant's attorney receives fees for the same work under both section 5904 . . . and [EAJA] the claimant's attorney refunds to the claimant the amount of the smaller fee" and holding that "the representation of a claimant in pursuit of a claim at all stages of the adjudication process is the 'same work' [for the purposes of the EAJA] regardless of the tribunal before which it is performed").

      I reject Defendants' assertion that the fees paid in 2002 were illegal because attorneys may not accept fees from veterans for services rendered before the Bureau of Veterans Affairs.  *See* Def. Resp. Br. at 6.  The relevant statute provides only that attorneys may not charge for services performed prior to a final decision by the Board of Appeals.  28 U.S.C. § 5409(c)(1).  The 2002 fees were paid for appellate services performed after Mr. LaPointe appealed from the Board of Appeals' first final decision.

      **D.  Application of 38 C.F.R. § 20.609(f).**  Defendants assert that the July 2000 contingency-fee agreement is excessive and unreasonable on their interpretation that 38 C.F.R.

§ 20.609(f) limits attorney recovery to twenty percent of back benefits.  Again, I disagree.  That section provides:

> Fees which total no more than 20% of any past-due benefits awarded, as defined in Rule 20.3(n) of this part will be presumed to be reasonable.

As the Veterans Court explained in *Carpenter*, § 20.609(f) applies only to those contingency fee agreements in which the attorney arranges for the VA to directly pay the attorney from past-due benefits awarded to the veteran; it does not apply to those agreements in which the attorney collects his fee from his client.  15 Vet. App. at 76.

    **E. Statutory reasonableness.**  But notwithstanding the parties' agreement, the Court must consider federal statutory limits on attorney fees in veterans' benefit cases.  *See Scates v. Principi*, 282 F.3d 1362, 1369-70 (Fed. Cir. 2002) (noting that, although state law ordinarily controls attorney-client relationships, since federal statute regulates fees that may be charged in veterans' benefit cases, federal law should be applied).

> Since the Civil War era, Congress has limited the fees attorneys may charge for representing persons who apply for veterans' benefits. Those limitations were originally implemented to protect the veteran from extortion or improvident bargains with unscrupulous lawyers who overcharged for work that consisted mainly of filing uncomplicated forms for pension benefits on behalf of veterans with limited literacy skills.
>
>     For more than 120 years, attorney fees for assisting veterans and their survivors in prosecuting benefit claims were capped at $10.  Congress purposely limited the role of lawyers in the veterans' benefits process in order to protect claimants' benefits from being diverted to lawyers and to avoid making the claims process adversarial in nature, particularly in light of the highly effective representation provided for free by veterans' service organizations.
>
>     In 1988, as part of the statute that provided for judicial review of administrative decisions on veterans' claims, Congress repealed the $10 fee cap and allowed attorneys to charge reasonable fees to represent claimants, but only under certain circumstances.

*Carpenter, Chartered v. Sec'y of Veterans Affairs*, 343 F.3d 1347, 1350 (Fed. Cir. 2003)

(internal quotation marks and citations omitted).

> The only statutory limits on fees pursuant to a non-direct-pay fee agreements are
> that an attorney cannot charge for services performed prior to entry of a final
> decision by the Board and the fee cannot be "excessive or unreasonable." *See* 38
> U.S.C. § 5904(c)(1) and (2).  However, the mere fact that a fee pursuant to a non-
> direct-pay fee agreement exceeds the 20% does not make it 'patently unreasonable
> on its face' such that there should be a [*sua sponte*] intrusion into the agreement
> entered into by the attorney and his client.

*Carpenter*, 15 Vet. App. at 76.  Applying the factors listed in 38 C.F.R. § 20.609(e)[2], the court in

*Carpenter* held that a 30% contingency fee on an award of over $206,000 of back benefits was

not unreasonable because, even though there was no evidence that the attorney had spent a great

---

[2]        38 C.F.R. § 20.609(e) provides:

Fees permitted. Fees permitted for services of an attorney-at-law or agent admitted to
practice before the Department of Veterans Affairs must be reasonable. They may be based on a
fixed fee, hourly rate, a percentage of benefits recovered, or a combination of such bases. Factors
considered in determining whether fees are reasonable include:

(1) The extent and type of services the representative performed;

(2) The complexity of the case;

(3) The level of skill and competence required of the representative in giving the services;

(4) The amount of time the representative spent on the case;

(5) The results the representative achieved, including the amount of any benefits recovered;

(6) The level of review to which the claim was taken and the level of the review at which the
representative was retained;

(7) Rates charged by other representatives for similar services; and

(8) Whether, and to what extent, the payment of fees is contingent upon the results achieved.

deal of time in the case, the case was complex, the attorney was competent, the attorney achieved a great deal of success for his client, and the amount awarded was quite large. *Id.* at 78-79. "An attorney taking a case on a contingent basis may earn a large fee for very few hours; however, that same attorney also takes the risk that he will receive no fee, regardless of the number of hours spent on a case." *Id.* at 79, *but cf. Silverman v. Brown*, 7 Vet. App. 487 (1995) (suggesting that a contingency fee agreement calling for a fee not to exceed 50% of benefits awarded plus additional reasonable compensation would be facially excessive and unreasonable).

But in veteran's benefit cases, the parties' contingency fee agreement is not the sole controlling factor. Applying the factors in 38 C.F.R. § 20.609(e) and using the undisputed facts submitted in the record by the parties, I conclude that a 1/3 contingency fee is unreasonable and excessive for the third successful appeal in this case and the fees for that appeal should be reduced for the following reasons.

First, Mr. LaPointe has already received almost $40,000 in fees for his services in the first two successful appeals based upon a 1/3 contingency fee. To obtain retroactive application of back benefits that resulted in the largest back-benefit sum, Mr. LaPointe had to file only a single Supplemental Notice of Disagreement. The record of evidence presented to the VA, *see* Def. Victor Bennish's Ans. Ex. 6, indicates that the issue presented was not complex, and Mr. LaPointe does not argue that the case was complex. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 329-30 (1985) ("the great majority of [veterans benefit] claims involve simple questions of fact, or medical questions relating to the degree of a claimant's disability . . . only the rare case turns on a question of law. There are undoubtedly "complex" cases pending before the VA, and they are undoubtedly a tiny fraction of the total cases pending."). Mr.

LaPointe was not required to appear for any hearings or to provide additional briefing.  Unlike

other cases that have 1/3 contingency-fee agreements, like probate challenges and tort suits, the

third proceeding was essentially nonadversarial in that Mr. LaPointe did not conduct discovery or

engage in any other kinds of litigation processes.  Mr. LaPointe never met personally with Mr.

Bennish or Donna Bennish.  He has not presented any evidence indicating the number of hours he

spent on Mr. Bennish's case, and the circumstances indicate that he spent very little time on the

third successful appeal.  Mr. LaPointe is obviously experienced and competent and specializes in

veteran's benefits, and he obtained a large sum of money for his client, which weighs in favor of

approving  as reasonable a fee in the presumptively-reasonable contingency fee amount of 20%

that the VA considers proper in direct-pay cases.  Twenty percent is the maximum fee allowed by

similar practitioners who obtain their fee directly from the VA.  And, finally, the record indicates

that Mr. Bennish had such financial hardship that Mr. LaPointe successfully obtained a waiver of

the appellate filing fees in his case, *see* Court of Vet. Appeals Rule 24, thus a fee of 20% instead

of 33 1/3% of the benefits will better fulfill Congress's intent that more benefits be placed in the

hands of the veteran who is economically distressed.   I conclude that 20% of Mr. Bennish's back

benefits of $227,441 is a reasonable fee for Mr. LaPointe's services on the third successful appeal.

   **F.  Motion for preliminary injunction.**  Mr. LaPointe moved for injunctive relief

requiring Defendant Kenneth Beal, who holds Mr. Bennish's back benefits in a trust account

pending resolution of the attorney-fees issue, to deposit a sufficient sum of money into this

Court's registry to satisfy the fees claimed until an adjudication is made as to Mr. LaPointe's

entitlement to such funds.  Because this order adjudicates Mr. LaPointe's right to attorney fees,

there is no need for such injunctive relief.

NOW, THEREFORE, Plaintiff's Motion for Summary Judgment [Doc. No. 13] is

**GRANTED** to the extent that Mr. LaPointe is entitled to receive $45,488.20 as reasonable legal

fees, less the $850 he received from EAJA funds, for a total of $44,638.20 plus interest.  The

Motion for Preliminary Injunction [Doc. No. 29] is **DENIED** as moot.

       **IT IS SO ORDERED.**

Dated this 1st day of June, 2006.

                                   _____

                                   **MARTHA VÁZQUEZ**
                                   **CHIEF UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiff*:
Louis J. Vener
Albuquerque, NM


*Attorney for Defendants*:
Rita Nunez Neumann